NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OMAR SAFAR & SEVEEM SAFAR<br><br>Plaintiffs,<br><br>v.<br><br>COX ENTERPRISES, INC., et al.<br><br>Defendant. | Civil Action No. 10-3069 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendant Manheim Remarketing, Inc. ("Defendant")'s motion for summary judgment. The Court has considered the submissions made in support of and in opposition to Defendant's motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion is DENIED.

**I.      INTRODUCTION**

This action arises out of a slip and fall incident at Defendant's Manheim Auto Auction facility (the "facility") in Newburgh, New York on June 20, 2007. On June 16, 2010, Plaintiffs Omar Safar ("Safar") and Seveem Safar filed a two-count complaint alleging causes of action for negligence and loss of consortium. Defendant moved for summary judgment on June 7, 2013.

## II. FACTUAL BACKGROUND[1]

On the morning of June 20, 2007, Safar entered the facility to attend an auto auction. (Def. Statement of Undisputed Material Facts ("SUMF") at ¶¶ 1, 5.) Upon entering the facility, Safar turned to his right and walked to a badge machine to obtain a bidder's badge to participate in the auction process. (Pl. Supp. SUMF at ¶ 67.) Because the badge machine was out of order, Safar walked to a counter adjacent to the badge machine to obtain a bidder's badge from an auction representative. (*Id.*) As Safar walked to the counter, he slipped and fell, landing on his right elbow and sustaining injuries. (*Id.*)

National Weather Service observations and Doppler radar images confirm that on the evening before the alleged incident, there was rain in the Newburgh, New York area. (*See* Pl. Supp. SUMF at ¶ 62; Def. Resp. SUMF at ¶ 62.) The rain continued to fall intermittently until between 8:00 and 8:30 a.m on June 20, 2007. (*Id.*) According to Safar's weather expert, Frank Lombardo, approximately .20-.50 inches of rain fell between 10:00-10:30 p.m. on June 19, 2007 and 8:00-8:30 a.m. on June 20, 2007. (Pl. Supp. SUMF at ¶ 64, citing Lombardo Expert Rep. at 5.)[2]

After Safar's fall, Karl Kilpatrick—an employee of Defendant—generated a Customer Accident / Injury Report. (Pl. Supp. SUMF at ¶ 65.) In said Customer Accident / Injury Report,

---

[1] These facts are taken from the parties' respective Rule 56.1 statements of material facts, and the exhibits attached to the parties' respective briefs. The Court notes that the parties have failed to comply with Rule 56.1(a) because they filed their respective Rule 56.1 statements as part of their briefs rather than as a separate document. *See* Loc. Civ. R. 56.1(a) ("Each statement of material facts *shall* be a separate document (*not part of a brief*) and shall not contain legal argument or conclusions of law.") (emphasis added). Additionally, in its reply brief, Defendant failed to include a table of contents or table of authorities as required by Local Civil Rule 7.2(b). The Court will excuse the parties' failure to comply with the Local Civil Rules in this instance. The parties are admonished, however, that they must strictly comply with the Local Civil Rules in connection with any future submissions to this Court.

[2] Beginning as early as 4:39 a.m. on June 19, 2007, the National Weather Service had assessed that there was a 60 percent chance of showers. (Pl. Supp. SUMF at ¶ 65.)

2

Kilpatrick noted that there was "rain outside" and that the "floor [of the facility's lobby was] not wet or slippery." (Anzalone Cert., Ex. B.)

Two witnesses who observed Safar's fall contradict Kilpatrick's assertion that the floor of the facility's lobby was not wet. Amjah Kaddourgh—an acquaintance of Safar—testified that the area around which Safar fell was wet and contained scattered footprints. (*See* Pl. Supp. SUMF ¶ 68, citing Anzalone Cert., Ex. E.) After Safar fell, Kaddourgh claims that he retrieved some of Safar's belongings from the floor which were wet. (*Id.*) According to Kaddourgh, workers placed two yellow "caution/ wet floor" signs in the lobby after Safar fell; these signs were purportedly not in the lobby prior to Safar's fall. (*Id.* at ¶ 69.) Kaddourgh further testified that he did not see any rubber mats or runners in front of the door through which he and Safar entered the facility. (*Id.* at ¶ 70.)

David Finnegan—an independent witness—made a statement noting that Safar lay "in a puddle of water" after he fell. (Pl. Supp. SUMF at ¶ 73.) Finnegan also noted that upon arriving at the facility via the door to his far right, there was no throw rug or runner in front of the door. (*Id.* at 72.)

Kathleen Giordano—another employee of Defendant—testified that while there were four entrances to the lobby area of the facility, the interior floor area in front of only three of those entrances had a mat in front of same, and that the door through which Safar entered was missing a mat. (Pl. Supp. SUMF at ¶ 85; Def. Resp. SUMF at ¶ 85.) Giordano also testified that it was Defendant's policy to place additional floor mats in the lobby when there was inclement weather for "drippings of feet and stuff" and to place "caution, wet floor" signs in the entrance to the lobby to warn patrons of the potential slippery lobby floor and "prevent slippage from wet flooring." (Pl. Supp. SUMF at ¶ 86, citing Anzalone Cert., Ex. G.)

At the time of Safar's fall, the facility's lobby was equipped with a closed circuit surveillance video camera. (Def. SUMF at ¶ 2.) This camera recorded the area where Safar fell for approximately a half hour before Safar's fall and its immediate aftermath. (*Id.*) According to Defendant, the camera recorded a number of patrons entering and walking through the lobby prior to Safar's fall without incident. (*See id.* at ¶¶ 6-55.) Further, Defendant asserts that the video footage does not show anyone "carrying a rain jacket, umbrella, dripping wet, or who appears to be dressed in a manner that would protect against rainy conditions." (*Id.* at ¶ 61.) Safar's engineering expert—John S. Posouney, P.E.—has averred that "the subject surveillance video in this matter is not in real time." (Pl. Supp. SUMF at ¶ 89.) Posouney has further averred that, based on his review of the surveillance video, there was no long floor mat in the front of the right side door that Plaintiff used to enter the facility.

## II.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). An issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must first demonstrate that there is no genuine issue of material fact in dispute, such that a grant of summary judgment would be appropriate. *See Celotex v. Catrett*, 477 U.S. 317, 325 (1986). To do so, "the moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young*, 494 F.3d 418, 424 (3d Cir. 2007). If the moving party satisfies this burden, the burden shifts to the non-moving party to point to sufficient evidence that creates genuine issues of disputed material fact "such that a reasonable

jury could find in its favor." *Id.*; *see also Celotex*, 477 U.S. at 332. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). In deciding whether there are any genuine issues of disputed material fact, courts must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (citation omitted). "Thus, if a reasonable fact finder could find in the nonmovant's favor, then summary judgment may not be granted." *Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).

## III. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as complete diversity exists between Plaintiffs and Defendant.[3]

## IV. DISCUSSION

"To prevail on a negligence claim under New Jersey law,[4] a plaintiff must establish the following four elements: (1) duty of care; (2) breach of duty; (3) proximate cause; and (4) actual damages." *Brown v. United States*, No. 08-3382, 2010 U.S. Dist. LEXIS 63521, at *9 (D.N.J. June 25, 2010) (citing *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987)). "The existence of a duty is a question of law to be determined by a judge and, ultimately, is a question of fairness and policy." *Arvanitis v. Hios*, 707 N.J. Super. 577 (App. Div. 1998) (citing *Snyder v. American*

---

[3] On July 25, 2013, this Court entered an order requiring the parties to show cause why this Court has subject matter jurisdiction to entertain this action in light of Plaintiffs' failure to adequately allege the citizenship of certain defendants in their complaint. On July 30, 2013, Plaintiffs submitted a letter explaining that the defendants whose citizenship was in question are no longer parties to this action. Accordingly, the Court is satisfied that it has subject matter jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. *See, e.g., Osuch v. Optima Mach. Corp.*, No. 10-6101, 2011 U.S. Dist. LEXIS 74643, at *8 (E.D. Pa. July 12, 2011) (noting that when non-diverse parties are dismissed, diversity jurisdiction may be preserved) (citing *Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483 (3d Cir. 2006)).

[4] The parties do not dispute that New Jersey law applies to the instant dispute.

5

*Ass'n of Blood Banks*, 144 N.J. 269, 292 (1996)). "Ordinarily, on the other hand, whether there was a breach of the duty, foreseeability, and proximate cause are issues 'peculiarly within the competence of the jury.'" *Arvanitis*, 707 N.J. Super. at 582 (quoting *Anderson v. Sammy Redd & Assocs.*, 278 N.J. Super. 50, 56 (App. Div. 1994)).

In its brief in support of its motion for summary judgment, Defendant appears to argue that Safar cannot satisfy the breach and causation elements of a negligence claim because: (1) "no dangerous condition was present at the time [of Safar's fall]" and (2) Defendant had no "constructive or actual notice of an alleged dangerous condition." (*See, e.g.*, CM/ECF No. 29-2 at 16, 19.)[5]

### A. Whether a Reasonable Trier of Fact may Find that a Dangerous Condition Existed on the Floor of the Facility's Lobby

Defendant maintains that the "video evidence demonstrate[s] . . . that the alleged dangerous condition never existed on the lobby floor." (CM/ECF No. 29-2 at 19.) While Defendant concedes that there is contradictory testimonial evidence, it argues that this Court should disregard this evidence in light of the video footage. In so doing, Defendant relies primarily on *Scott v. Harris*, 550 U.S. 372 (2007).

In *Scott*, a police officer attempted to "stop a fleeing motorist from continuing his public-endangering flight by ramming the motorist's car from behind." *Id.* at 374. After ramming the rear of the motorist's vehicle, the vehicle overturned and crashed, causing the motorist to suffer injuries which rendered him a quadriplegic. *Id.* at 375. The motorist filed suit under 42 U.S.C. § 1983, alleging that the officer used excessive force resulting in an unreasonable seizure under the Fourth Amendment. *Id.* at 375-76. The motorist maintained that contrary to the police officer's

---

[5] Defendant has not addressed Seveem Safar's claim for loss of consortium in its brief. The Court, therefore, construes Defendant's motion as seeking summary judgment only as to the negligence claim.

version of the facts, his driving posed little threat to pedestrians and other motorists, as he was driving cautiously. *See id.* at 379. The U.S. Supreme Court rejected the motorist's version of events because a videotape confirmed that his vehicle was "racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast . . . placing police officers and innocent bystanders alike at great risk of serious injury." *Id.* at 379-80. In holding that the court of appeals erred in concluding that summary judgment in favor of the defendant was inappropriate, the U.S. Supreme Court noted that "[w]hen opposing parties tell two different stories, one of which is *blatantly contradicted* by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380 (emphasis added).

Defendant's reliance on *Scott* for the proposition that this Court should disregard the evidence suggesting that the floor of the facility's lobby was wet or slippery is misplaced. Having thoroughly reviewed the video footage that Defendant submitted in connection with its summary judgment motion, the Court declines to conclude that said footage *blatantly contradicts* the statements of witnesses Kaddourgh and Finnegan, who aver that the floor was, indeed, wet. The video does not show either the presence or absence of water in the area where Safar fell. (*See* Williams Cert., Ex. B at 9:20:45.) Although Defendant accurately emphasizes that the video does not show anyone walking through the facility's lobby with an umbrella or a raincoat, this fact is insufficient for the Court to conclude as a matter of law that no dangerous condition existed on the floor of the facility's lobby. This is particularly so since this Court must construe the facts in the light most favorable to Safar in deciding this summary judgment motion.[6]

---

[6] Defendant's other argument that numerous patrons walked through the facility's lobby floor without incident, and that Safar's fall was caused by his brisk pace as opposed to any dangerous condition, may ultimately convince a jury to find that Defendant is not liable for Safar's injuries. They do not, however, create an absence of a genuine issue of material fact as to the cause of Safar's injuries.

B.  Whether a Reasonable Trier of Fact may Find that Defendant had Knowledge of a Dangerous Condition on the Floor of the Facility's Lobby

It is well settled that "[t]he duty of care owed by an owner or occupier of land to third persons coming on to that land is determined according to the status of that person, *i.e.*, whether that person is an invitee, licensee, or trespasser." *Bennett v. Real Prop. Servs. Corp.*, 66 F. Supp. 2d 607, 615 (D.N.J. 1999) (applying New Jersey law).

"An invitee is invited or permitted to enter or remain on the occupier's lands for a purpose of the occupier. He enters by invitation, express or implied." *Jenkins v. Walter J. Conley Elks Lodge 1379*, No. A-2823-07T2, 2009 N.J. Super. Unpub. LEXIS 382, at * 3 (App. Div. Jan. 30, 2009) (citing *De Robertis v. Randazzo*, 94 N.J. 144, 152 (1983)); *see also Russell v. Merck & Co.*, 211 N.J. Super. 413, 417 (App. Div. 1986) ("An invitee, in the legal sense, is one who is on the premises to confer some benefits upon the invitor other than purely social.") (quoting *Daggett v. Di Trani*, 194 N.J. Super. 185, 188-89 (App. Div. 1984) (internal quotation marks omitted)); *Puzzutiello v. Wurster*, No. A-4054-10T2, 2011 N.J. Super. Unpub. LEXIS 2729, at *9 (App. Div. Nov. 2, 2011) (defining an invitee as a "business visitor").

In this case, it is clear that Safar was an invitee,[7] as he entered the facility for a business purpose, that is, to participate in an auto auction. "The duty of care owed to an invitee is to use reasonable care to make the premises safe, and that includes a duty to make reasonable inspections to discover defective [or dangerous] conditions." *Bennett*, 66 F. Supp. 2d at 615 (citations omitted); *see also Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 434 (1993) (noting that the duty of care owed to an invitee "encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions."). When a landowner or land occupier knows or should have known of an unsafe condition, he may satisfy his duty by either correcting the

---

[7] Defendant does not argue that Safar was either a licensee or a trespasser. In fact, based on the legal standards that Defendant claims apply in this case, Defendant appears to concede that Safar was an invitee.

8

condition or warning the invitee of the condition. *See, e.g., Hopkins v. Fox & Lazo Realtors*, 252 N.J. Super. 295, 302 (App. Div. 1991) (holding that real estate broker "has a duty to warn his invitees of dangerous conditions on the premises of which he has actual knowledge and which he should expect that the invitees will not discover for themselves.").

"Ordinarily an injured plaintiff asserting a breach of . . . [the] duty [owed to an invitee] must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003). A plaintiff may establish that a defendant had notice by showing either that (1) the defendant "actually knew the [dangerous] condition existed, and knew or should have known of its dangerous character," or (2) "that the condition had lasted for such a period of time, and was of such obvious nature" that the defendant had constructive notice. *See, e.g., Bradford v. Kupper Associates*, 283 N.J. Super. 556, 578 (App. Div. 1995). The New Jersey Supreme Court, however, has relaxed plaintiffs' burden of establishing actual or constructive notice in "circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." *See Nisivoccia*, 175 N.J. at 463.

According to Defendant, Safar cannot raise a question of material fact as to whether Defendant had constructive notice because Safar "critically fails to present any evidence that a spill was sufficiently open and obvious and had existed for a sufficient length of time to place [Defendant] on constructive notice of its existence." Defendant argues that this is so because the video footage and the fact that "at least 58 people walked at or near the precise location where [Safar] fell [without incident]" establish that Defendant did not have any notice of a dangerous condition. (*See, e.g.*, CM/ECF No. 29-2 at 17.) This Court disagrees.

9

As noted above, the video footage establishes neither the presence nor the absence of water in the area where Safar fell. Thus, the extent to which any water on the floor was "sufficiently open and obvious" is a factual question that would be inappropriate to decide on a motion for summary judgment. More importantly, based on the evidence in the record, a reasonable trier of fact may find that Defendant had constructive notice of a dangerous condition on the floor of the facility's lobby. Indeed, it had been raining prior to Safar entering the facility, the National Weather Service had predicted rain, two witnesses assert that the floor of the facility's lobby was wet, and one of Defendant's employees acknowledged that Defendant had a policy of mitigating against the risk of falls during inclement weather to prevent slippage from wet flooring—an acknowledgment that suggests knowledge that inclement weather could raise the risk of falls. In spite of Defendant's policy to mitigate against the risk of falls during inclement weather, no floor mat was placed by the entrance through which Safar entered the facility, or in the area between the malfunctioning badge machine and the adjacent counter. (*See* Williams Cert., Ex. E.) Yet, such mats were placed by three out of the four entrances to the facility's lobby and by the malfunctioning badge machine; a reasonable trier of fact may find, based on this fact alone, that Defendant either knew or should have known that the floor of the facility's lobby was wet, and that such a condition presented a danger to invitees entering the facility.

Construing the facts in the light most favorable to Safar compels this Court to conclude that a reasonable trier of fact may find that Defendant had constructive knowledge that a dangerous condition existed on the lobby of the facility's floor.

V.  **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is DENIED. An

appropriate Order accompanies this Opinion.

Dated: August 12, 2013

JOSE L. LINARES
U.S. DISTRICT JUDGE